# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LORI BROWN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 1:18-cv-377-SPB |
| ) | |
| **CORRECTIONAL OFFICER** ) | |
| **JEFFERY NEWELL, in his** ) | |
| **individual capacity,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Plaintiff Lori Brown, a phlebotomist employed by Correct Care Solutions, LLC, filed this civil rights action after being assaulted by an inmate housed at the State Corrections Institution at Albion ("SCI Albion"). The Defendants are Correctional Officer Jeffery Newell ("Newell"), Lieutenant Bill Harmon ("Harmon"), and two other correctional officers named as "John Doe" Defendants. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331.

Presently pending before the Court is a motion to dismiss the Complaint by Defendants Newell and Harmon. ECF No. 8. For the reasons that follow, the motion to dismiss will be granted.

### I. BACKGROUND

At all times relevant to this lawsuit, Plaintiff was employed as a phlebotomist by Correct Care Solutions, LLC, a private company that contracted with SCI Albion to provide medical services to inmates. Compl. ¶¶12-13. On January 11, 2018, Plaintiff was called upon by prison personnel to draw blood from Inmate Angel Muniz ("Muniz"), who had been scheduled for the blood draw because of low sodium. *Id*. ¶¶14-16. Unbeknownst to Plaintiff, Muniz had a history

1

of violent crimes and assaults, including numerous assaults on prison personnel and fellow inmates, which had led to him being transferred among several facilities within the state correctional system. *Id*. ¶¶18-19, 28-30.

On the day of Muniz's appointment, Harmon (the supervising officer), Newell, and two other corrections officers (collectively, the "Defendants") were assigned to guard Muniz and escort him to the blood draw. Compl. ¶17. Once inside the designated room, Muniz sat atop an examining table. *Id*. ¶¶21, 24. Muniz's hands and arms were shackled via a restraint system that wrapped around his waist. *Id*. ¶22. Although his legs were shackled together, they were not secured to the examination table. *Id*. ¶25. Newell stood to the right of Muniz while another unidentified corrections officer stood to Muniz's left. *Id*. ¶23. A third officer remained inside the room to operate a video camera, but stood closer to the doorway. *Id*. Harmon stood behind Plaintiff, "but off to her right." *Id*.

As Brown attempted to conduct the blood draw, Muniz "violently, and without any warning or provocation," kicked Brown in the abdomen and chest with both feet, causing her to slam into the wall directly behind her. Compl. ¶32. As a result, Brown sustained bodily injuries, emotional trauma, medical expenses, and lost income. *Id*. ¶44.

Plaintiff filed the instant lawsuit on December 6, 2018, asserting a single cause of action under 42 U.S.C. §1983 for the alleged violation of her constitutional rights. Defendants filed the pending motion to dismiss on February 14, 2019. The matter has been fully briefed and the issues sufficiently joined, making the Defendants' motion ripe for adjudication.

**II.     STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure recognizes a defense based upon the plaintiff's failure to state a claim upon which relief can be granted. "When considering a

Rule 12(b)(6) motion, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted). In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

Plaintiff's sole cause of action is brought under 42 U.S.C. §1983, which "is not itself a source of substantive rights," but provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979). To prevail under § 1983, a plaintiff must prove that she suffered the deprivation of a right secured by the United States Constitution or federal law by a person acting under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

In this case, it is not disputed that the named Defendants were acting under color of state law at all relevant times. Therefore, we need inquire only whether Plaintiff has plausibly alleged the violation of a federal right – specifically, her right under the Fourteenth Amendment to

3

substantive due process,[1] which "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights,* 53 U.S. 115, 125 (1992) (internal quotation marks omitted). Plaintiff's theory is that the Defendants' conduct caused her to sustain a deprivation of her liberty interest in her own bodily integrity. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) ("Individuals have a constitutional liberty interest in their personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment.") (citations omitted).

Defendants dispute that Plaintiff has alleged a constitutional violation. Alternatively, they argue that they are qualifiedly immune from liability. We address each argument in turn.

### A. Has Plaintiff Stated a Fourteenth Amendment "State Created Danger" Claim?

Although the Due Process Clause does not impose an affirmative obligation on the State to protect its citizens, there is an exception to this general rule which "holds an officer liable if his conduct exposes an individual to a 'state-created danger.'" *Kedra v. Schroeter,* 876 F.3d 424, 436 (3d Cir. 2017). To prevail under this theory, a plaintiff must show that:

> (1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor "acted with a degree of culpability that shocks the conscience"; (3) the state and the plaintiff had such a relationship such that "the plaintiff was a foreseeable victim of defendant's acts," as opposed to a member of the public in general; and (4) the official affirmatively used his authority "in a way that created danger to the citizen or that rendered the citizen more vulnerable to danger" than had he never acted.

---

[1] In addition to alleging a Fourteenth Amendment violation, the Complaint makes passing reference to a Fourth Amendment violation. *See* Compl. ¶43 ("The actions of the defendants deprived Brown of her rights pursuant to the Fourth (bodily integrity) and Fourteenth Amendments (deprivation of liberty interests) to the U.S. Constitution."). This singular conclusory allegation does not plausibly implicate any violation of Plaintiff's Fourth Amendment rights, such as the right to be free from unreasonable seizures, and Plaintiff does not advocate such a theory in her brief opposing the pending motion. Accordingly, to the extent Plaintiff originally intended to pursue a §1983 claim based on a Fourth Amendment violation, the Court deems such claim abandoned.

4

*Id.* at 436 (quoting *Bright v. Westmoreland Cty.,* 443 F.3d 276, 281 (3d Cir. 2006)).

Defendants contend that Plaintiff has failed to allege a "state-created danger" because the second, third, and fourth elements are absent here. The Court agrees that, at the very least, elements two and four are lacking.

1. Requisite Degree of Culpability

Under substantive due process principles, government conduct amounts to an actionable constitutional violation only when it is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 847 (1998). The exact level of culpability required to shock the conscience depends upon the circumstances of the case and the amount of time that the government actor has to deliberate on his or her course of action. *Lewis,* 523 U.S. at 848-54; *Kedra,* 876 F.3d at 437. Here, both sides appear to agree that, based on the allegations in the Complaint, Defendants had time to make an "unhurried judgment." *Kedra,* 876 F.3d at 437 (internal quotation marks, alteration, and citation omitted). In such circumstances, "a plaintiff need only allege facts supporting an inference that the official acted with a mental state of 'deliberate indifference.'" *Id.* (quoting *Sanford v. Stiles,* 456 F.3d 298, 309 (3d Cir. 2006)). Although the phrase "deliberate indifference" has "an elusive quality to it," *Kedra,* 876 F.3d at 437, our Circuit Court of Appeals has described the concept as a "conscious disregard of a substantial risk of serious harm." *Id.* at 447 (internal quotation marks and citation omitted).

In determining whether Plaintiff has met the requisite pleading standard, the Court must first "identify allegations that, because they are not more than conclusions, are not entitled to the presumption of truth." *Janikowski v. Lellock,* 649 F. App'x 184, 186 (3d Cir. 2016) (quoting *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011)). This includes Plaintiff's

conclusory averments about the Defendants' mental culpability. *See, e.g.,* Compl. ¶35 ("Defendants' conduct, vis-a-vis their observation of and attention to Inmate Muniz, and to the safety of Brown, was grossly negligent and deliberately indifferent toward Brown's rights, safety, and well-being."); *id.* ¶39 ("Defendants acted with a degree of culpability that shocks the consci[ence] given Inmate Muniz's violent history and their grossly negligent and deliberately indifferent approach to guarding and insuring that he was properly shackled to the table to minimize movement of extremities."); *id.* ¶42 ("Defendants exhibited willful disregard or deliberate indifference to the plight of Brown as more fully set forth above.").

The remaining well-pled allegations of the Complaint assert the following facts relative to Plaintiff's interaction with Muniz:

- Muniz's hands and arms were shackled via a restraint system that wrapped around his waist (Compl. ¶22);

- Muniz's legs were also shackled together, although not secured to the examination table (*id*. at ¶25);

- Muniz sat atop the examination table (*id*. at ¶24);

- Newell stood next to Muniz's right side, while another officer stood next to Muniz on the left (*id*. at ¶23);

- Harmon stood behind Plaintiff off to her right (*id*.).

Accepting these averments as true, the Court finds that they fail to demonstrate that Defendants consciously disregarded a substantial risk of serious harm to Plaintiff. At most, a generous reading of Plaintiff's allegations might support an inference that the Defendants were negligent in failing to take more proactive protective measures. This is insufficient, however, because "liability for negligently inflicted harm is categorically beneath the threshold of Constitutional due process." *Lewis,* 523 U.S. at 849. Consequently, Plaintiff has not pled the second element of a "state-created danger" claim.

6

### 2. Affirmative Use of State Authority

To satisfy the fourth element of her "state created danger" theory, Plaintiff must plausibly allege that the Defendants affirmatively used their authority in a way that created danger for the Plaintiff or that rendered her more vulnerable to danger than she would have been if they had never acted. *Kedra,* 876 F.3d at 436. "'[L]iability . . . [must be] predicated upon the states' *affirmative acts* which work to the plaintiff's detriment in terms of exposure to danger. It is the *misuse of state authority, rather than a failure to use it*, that can violate the Due Process Clause.'" *Phillips,* 515 F.3d at 235 (first alteration, ellipsis, and emphasis in the original) (quoting *Bright*, 443 F.3d at 282). The issue is "whether state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." *Bright*, 443 F.3d at 283 (internal citations and quotation marks omitted).

Here, Defendants contend – and the Court agrees – that Plaintiff has not alleged the requisite affirmative action. Instead, Plaintiff alleges only acts of omission, *viz*:

- Defendants failed to shackle Muniz's legs to the examination table (Compl. ¶25, 39);

- Defendants failed to otherwise restrain and secure Muniz's legs and body as Plaintiff approached to secure his blood (*id*. at ¶¶ 27, 36, 38);

- Defendants failed to properly monitor Muniz to prevent him from kicking Plaintiff (*id*. ¶¶37, 39); and

- Defendants failed to warn Plaintiff of Muniz's background for violence against prison staff and others (*id*. at ¶¶28, 36).

By way of affirmative acts, Plaintiff alleges only that she was "called upon" and "requested" by SCI Albion and Correct Care Solutions, LLC to draw blood from Muniz and, to that end, Defendants "brought Inmate Muniz into a small medical examination room." (Compl. ¶¶14, 20, 26, 41). But Plaintiff's close interaction with potentially violent inmates was a foreseeable aspect of her job, and the danger inherent in such encounters cannot fairly be

7

imputed to the Defendant officers. Nothing in the Complaint suggests that the Defendants had the option of *not* bringing Muniz into the examining room in accordance with his scheduled appointment and placing him in close proximity to Plaintiff. Thus, the Defendants' conduct in this regard did not constitute a misuse of their authority that increased the risk of harm to Plaintiff.

Plaintiff argues in her brief that the Defendants acted affirmatively when they "positioned themselves" as they did in the examining room and shackled Muniz's feet in a way that allowed him to kick Plaintiff. ECF No. 11 at 5, 11. If not for these actions, Plaintiff argues, she would not have been in a position to be violently attacked. But these objections are merely another way of alleging that the Defendants *failed* to shackle Muniz more securely and *failed* to assume a more proactive posture so as to better anticipate and prevent Muniz's unprovoked attack. Again, Plaintiff has not pointed to any affirmative misuse of state authority that placed her in greater danger than she would have otherwise faced, had Defendants not acted at all.[2]

The facts of this case stand in stark contrast to those in which courts have found that third parties stated a plausible "state-created danger" claim based upon an officer's actions vis-a-vis a prisoner within the officer's custody. In *L.W. v. Grubbs,* 974 F.2d 119 (9th Cir. 1992), for example, the U.S. Court of Appeals for the Ninth Circuit held that a valid §1983 claim was stated by a nurse who was raped and terrorized by a male inmate at a medium security custodial institution. The assault occurred when the plaintiff was left alone in the institution's medical clinic with the inmate -- a violent sex offender who had failed all of the institution's treatment programs. The plaintiff alleged that her supervisors had placed her in danger by selecting the

---

[2] With respect to the manner in which the Defendants positioned themselves, Plaintiff does not specifically allege what the Defendants should have done differently. Had they stood Muniz up, for example, it is possible that he might still have been able to assault Plaintiff by charging into her, head-butting her, or the like.

8

inmate for a position within the medical clinic, knowing that: he was unqualified for the position in question, he had "an extraordinary history of unrepentant violence" against women and girls, he was likely to assault a female if left alone with one, the plaintiff would be alone with the inmate during the course of her rounds, and the plaintiff would not be prepared to defend herself because she had not been informed at the time of her hiring that she would be left alone with violent offenders. 974 F.2d at 121. The court of appeals ruled that the plaintiff's §1983 claim could proceed because the alleged actions of the defendants "affirmatively created the dangerous situation which resulted in L.W.'s assault. . . ." *Id*. at 122.

In *Martin-McFarlane v. City of Phila.,* 299 F. Supp. 3d 658 (E.D. Pa. 2017), a nurse was found to have adequately stated a "state-created danger" claim in relation to an assault she sustained in a public hospital at the hands of a prisoner (Justin Mackie) who was being treated at that location. Although the prisoner was initially being guarded by two correctional officers, one of the officers (C.O. Cox) left the hospital room. The remaining correctional officer (C.O. Doman) subsequently decided to remove the prisoner's restraints -- contrary to a prison policy that prohibited the removal of mechanical restraints except as directed for the purpose of medical treatment. After the restraints were removed, the prisoner – a man charged with murder and various other violent offenses – overpowered C.O. Doman and escaped into the hallway, where he assaulted the plaintiff. The court found that "C.O. Cox's decision to exit the hospital room and leave Mackie attended with only one correctional officer, and C.O. Doman's decision to remove Mackie's restraints, may 'shock the conscience' given the violent nature of the crimes for which Mackie was in custody." 299 F. Supp. 3d at 667. The court also found that these

9

actions amounted to sufficiently affirmative conduct for purposes of alleging a "state-created danger." *Id.*[3]

Similarly, in *Does I-IV v. Kane Cty.,* 308 F. Supp. 3d 960 (N.D. Ill 2018), the court found that a "state-created danger" claim was adequately pled by various health care personnel who had been taken hostage within in a public hospital by a convicted felon. In that case, the corrections officer who was assigned to guard the inmate had unshackled him on more than one occasion and had allowed the inmate to use the bathroom unrestrained and unsupervised, despite the officer's awareness that the inmate posed a danger to hospital personnel. 308 F. Supp. at 969. While unshackled, the inmate grabbed the officer's gun and overpowered him, at which point the officer fled the scene and hid in another hospital room. *Id.* The court found that the plaintiffs had adequately pled affirmative, conscience-shocking acts on the part of the officer for purposes of asserting a substantive due process claim. *Id.* at 969, 971. Further, the court ruled that the officer was not protected by qualified immunity, because the "state-created danger" doctrine had been clearly established at the time of the incident, and the corrections officer allegedly knew of the inmate's violent tendencies and the increased danger he would pose to third parties if the officer lost control over him. *Id.*

The instant case stands in material contrast to the foregoing scenarios. At all times, four officers were present in the examining room where Plaintiff was to conduct the blood draw. Three officers stood in close proximity to Muniz and Plaintiff at the time of the assault, and Muniz's restraints were never removed. Although, the Defendants may have acted affirmatively in the limited sense that they shackled Muniz in a particular manner, escorted him into the

---

[3] The court deferred deciding whether the defendants would be entitled to qualified immunity, citing a need for further record development. 299 F. Supp. 3d at 668-69.

10

medical room (as they were required to do), and positioned themselves around Muniz and the Plaintiff in a particular way, the Complaint as a whole makes clear that it was the Defendants' alleged failure to undertake better protective measures that Plaintiff believes caused her injury.

In light of these foregoing pleading deficiencies, Plaintiff has not stated a plausible substantive due process violation under a "state-created danger" theory. For this reason, the Complaint must be dismissed.

### B. Are Defendants Entitled to Qualified Immunity?

Assuming *arguendo* that the Complaint states a plausible Fourteenth Amendment violation, the Court nevertheless concludes that Defendants are entitled to qualified immunity. This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). As recently summarized by the Supreme Court:

> officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." ... "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. ... In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." ... This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." ...

*D.C. v. Wesby*, --- U.S. ----, 138 S. Ct. 577, 589 (2018) (internal citations omitted).

Here, Plaintiff posits that Defendants should have known their alleged conduct would be unlawful under a "state-created danger" theory. According to Plaintiff, it would be clear to any reasonable correctional officer that "not affirmatively and proactively guarding a dangerous and violent inmate could cause the inmate to attack an innocent and defenseless person." ECF No. 11 at 13.

The Court does not agree. The Supreme Court has emphasized that:

> The "clearly established" standard ... requires that the legal principle clearly prohibit the officer's conduct *in the particular circumstances before him*. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." ... This requires a high "degree of specificity." .... We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." .... A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." ...

*Wesby,* 138 S. Ct. at 590 (emphasis added; internal citations omitted). Thus, "[w]hether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded." L.R. v. School Dist. of Phila., 836 F.3d 235, 241 (3d Cir. 2016) (quoting *Iqbal,* 556 U.S. at 673).

Given the presence of numerous officers in the examining room, the close proximity of at least two officers to Muniz as he interacted with Plaintiff, and the fact that Muniz was shackled at all times, the Court cannot say that the alleged unlawfulness of the Defendants' conduct would have been evident to "every reasonable officer" facing the same situation. While the Court acknowledges the rulings in *L.W.* and *Martin-McFarlane,*[4] discussed above, the Court cannot say that these decisions provided sufficient guidance to Defendants so as to place them on notice that the established law would "clearly prohibit [their alleged] conduct in the particular circumstances before [them]." *Wesby,* 138 S. Ct. at 590.[5]

---

[4] The decision in *Does I-IV* was issued after the date on which Plaintiff was assaulted by Muniz. Therefore, that ruling could not have informed the Defendants' understanding of the law as it relates to the legality *vel non* of their conduct.

[5] This is especially true in light of several decisions wherein courts, faced with arguably more egregious fact patterns, have ruled that no "state-created danger" was demonstrated. *See, e.g., Liebson v. New Mexico Corr. Dep't*, 73 F.3d 274, 275 (10th Cir. 1996) (prison librarian who was kidnapped, held hostage, and sexually assaulted by inmate failed to state a substantive due process claim based on allegations that correction officials changed the schedule of an officer

12

## IV. CONCLUSION

Based upon the foregoing reasons, the Complaint fails to state a viable §1983 claim under a "state-created danger" theory. Consequently, Defendants' motion to dismiss will be granted. Moreover, because the defects in Plaintiff's pleading cannot be cured through further amendment, her Complaint will be dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (observing that absent inequity or futility, courts must allow a plaintiff leave to amend a complaint).

An appropriate order follows.

SUSAN PARADISE BAXTER
United States District Judge

---

assigned to the library such that plaintiff was left on duty with no officer present); *Taylor v. Kan., Dep't of Corrs.*, Case No. 16-cv-2056-JWL, 2017 WL 1479375, at *6-7 (D. Kan. Apr. 25, 2017) (prison warden could not be held liable for a prison nurse's sexual assault by an inmate under the "state-created danger" theory based on his failure to provide the nurse with an alarm or panic button, his failure to station an officer within hearing range, and/or his failure to sufficiently investigate or warn staff about inmate's prior assaults on female staff members); *Dubrow v. City of Phila.*, Civil Action No. 07-537, 2008 WL 4055844 (E.D. Pa. Aug. 28, 2008) (prison nurse who was sexually assaulted by inmate in mental health unit did not state a cognizable "state-created danger" claim based on allegations that: (i) the office where the assault occurred had poor sight lines to corrections officers, lacked a panic button, and lacked automatically locking doors, (ii) defendants had switched the area in question from female inmates to male inmates without conducting a safety audit; and (iii) defendants failed to properly train plaintiff or warn her regarding the risk of assault), *aff'd*, 350 F. App'x 784 (3d Cir. 2009); *Hoover v. Beard*, Civil Action No. 03-1529, 2006 WL 2077016, at *4-5 (E.D. Pa. July 20, 2006) (prison nurse, who was assaulted after inmate broke free from corrections officers, could not maintain a "state-created danger" theory against supervisor who had assigned her to work in the RHU, where her assailant was housed; although the inmate was known to have sexually harassed the plaintiff on prior occasions, supervisor also knew that plaintiff had previously worked in the RHU without complaint, and inmates in the RHU were not allowed outside their cells unless they were handcuffed and escorted by two corrections officers), *aff'd*, 248 F. App'x 393 (3d Cir. 2007) (stating, in dicta, that alleged misconduct was not "conscience shocking" under "deliberate indifference" standard).

13

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORI BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:18-cv-377-SPB |
| | ) |
| CORRECTIONAL OFFICER | ) |
| JEFFERY NEWELL, in his | ) |
| individual capacity, *et al.*, | ) |
| | ) |
| Defendants. | ) |

O R D E R

AND NOW, this  6th day of September, upon consideration of the Motion to Dismiss filed by Defendants Jeffery Newell and Bill Harmon in the above-captioned matter, ECF No. [8], and all filings related thereto,

IT IS ORDERED, for the reasons set forth in the accompanying Memorandum Opinion, that the motion shall be, and hereby is, GRANTED, and the Complaint shall be, and hereby is, DISMISSED with prejudice.

SUSAN PARADISE BAXTER
United States District Judge